SMITH R. WATSON & Wife *vs.* LUTHER G. MOORE.

In an action of slander, for charging the plaintiff with stealing *two beds,* it is not competent for the plaintiff, for the purpose of showing malice, to prove that the defendant subsequently entered a complaint against him before a magistrate, for stealing *a lot of wood and old iron:* first, because the words used in the complaint do not relate to the charge which is the subject of the action; and, secondly, because such using of the words is a proceeding in a course of justice, before a magistrate having jurisdiction of the supposed offence.

The defendant, in an action of slander, brought by husband and wife, for words

Watson & Wife *v.* Moore.

spoken of the wife, cannot be allowed to prove, in mitigation of damages, that the defendant keeps a disorderly house.

It is not competent for the defendant, in an action of slander, with a view to show that the words were not spoken maliciously, to prove circumstances, which excited suspicion, and furnished reasonable cause for belief, on his part, that the words spoken were true.

THIS was an action on the case for slander, tried before *Merrick,* J., in the court of common pleas, and brought into this court on exceptions to the rulings of the judge at the trial.

The declaration contained two counts, the first alleging that the defendant charged Abigail Watson, the wife, with the crime of larceny; the second setting forth the words alleged to have been uttered by the defendant, as follows: "I should think you [meaning the said Abigail] had better bring back two of my beds you have stolen out of the attic, and sold to a pedler."

The defendants pleaded the general issue.

The plaintiff, having introduced evidence of the speaking of the words, proposed to give in evidence, for the purpose of proving malice on the part of the defendant, a complaint made subsequent to the commencement of this action, by the defendant against Abigail Watson, for larceny, in stealing *a lot of wood and old iron* from the defendant, and to call as a witness the magistrate before whom the complaint was tried. To the introduction of this evidence, the defendant objected, but his objection was overruled and the evidence admitted.

The magistrate, before whom the complaint was tried, testified, in substance, that he regarded the case as within his jurisdiction; that there was much evidence, both to support and to contradict the charge; and that on the whole he concluded to discharge the respondent.

The defendant, for the purpose of showing that he was not actuated by malicious motives, in the prosecution, offered to prove what testimony was given on the trial before the magistrate, but the court restricted the evidence to what was given by the defendant himself.

The defendant, in mitigation of damages, offered to prove

the character of the house, in which the plaintiffs lived, and the degree of control which the wife had over it ; that it was a drinking and gambling house, and the resort of licentious and disorderly persons, for licentious and disorderly purposes ; and that the character of the house and of the acts done there were known to the wife.  The judge ruled, that the defend- ant might show that the wife had the control and management of the house, and any conduct of hers in the house, and in the management of it ; or the conduct of other persons, in the house, or its character generally, while she had the management and control ; but that the defendant could not give in evidence the character of the house, while it was under the control of her husband, or of persons acting under his authority ; or the conduct of persons resorting to the house while under the husband's control, or the control of those acting under him ; though he might show generally that the house was kept as one of ill fame.

The defendant, with a view to rebut any evidence of malice, and in mitigation of damages, offered to prove, that there were certain beds belonging to him in the house occupied by the plaintiffs, as one of a series of facts from which the jury would be asked to draw the conclusion, that, at the time of the speaking of the words, the defendant had reasonable cause to believe, that the wife had been guilty of larceny.  But the judge rejected the evidence.

The defendant, in mitigation of damages, and to rebut the presumption or evidence of malice, offered to show the circumstances under which the charge was made and the words uttered, and that by the conduct of the wife, the defendant was led honestly to believe, that the words uttered by him were true ; and, for this purpose, to prove the following facts, which had been communicated to him before the time when the words were alleged to have been uttered or the charge made : That one Fuller, a pedler, some time in the summer of 1846, called at the house occupied by the plaintiffs, for the purpose of trade ; that Mrs. Watson told him she should like to trade, and that she had a feather bed which she would

exchange for some tin ware; that she accordingly directed Fuller to follow her up stairs into the attic, and there showed him a feather bed, and traded with him for it; that she directed him to drive his cart round the house, beneath a certain window, to take care that the defendant or his people did not see him, to throw the bed from the window into the cart, and to drive off without being seen by the defendant or his family; that he did as directed, — that the bed had the appearance of being an old one, — that he allowed Mrs. Watson six cents a pound for the feathers, — and that he subsequently disposed of both feathers and tick. But the judge rejected the evidence.

To the several rulings above mentioned the defendant excepted.

*B. F. Thomas* and *F. H. Dewey*, for the defendant.

*N. Wood*, for the plaintiffs.

METCALF, J. There are two grounds on which we are of opinion, that the evidence admitted at the trial, respecting the complaint preferred by the defendant against the female plaintiff, and the proceedings upon that complaint, ought to have been rejected.

1st. Assuming that the complaint and the defendant's testi-mony before the magistrate are to be regarded merely as other words uttered by the defendant, we hold that they were not admissible in evidence, because they did not relate to the charge of larceny, which is the ground of the present action, but to a charge of another and distinct larceny. The decisions of English judges, sitting at *nisi prius*, as to the admissibility in evidence, on the trial of actions for oral slander, of other words spoken or written by the defendant concerning the plaintiff, are irreconcilable. (See the cases collected in 3 Steph. N. P. 2577; Cooke's Law of Defamation, 148 – 151; and 2 Greenl. on Ev. § 418, and notes.) We recollect only one case of this class, in which either of the English courts, sitting in bank, has made an adjudication on this subject. That case is *Tate* v. *Humphrey*, 2 Campb. 73, note, which was an action for words charging perjury. The plaintiff, to

show *quo animo* the words were spoken, offered in evidence a bill of indictment for perjury, which had been subsequently preferred against him by the defendant, and which the grand jury returned *ignoramus.* Baron Graham received this evidence, to prove the malicious intent with which the words were spoken. On an application to set aside the verdict, which was found for the plaintiff, the judges were of opinion that the evidence had been properly admitted. Sir James Mansfield afterwards approved this decision, because, as he said, " the indictment itself, in point of fact, merely repeated the words for which the action was brought. But," he added, " if it had been an indictment for highway robbery, I should have thought very differently." 2 Campb. 75. The *doctrine* of *Tate* v. *Humphrey*, as thus stated, was recognized and acted upon in *Bodwell* v. *Swan*, 3 Pick. 376, upon a considerate examination of all the authorities, English and American, which had then been published ; and the court decided that a repetition of the words for which the action was brought, or the uttering of words of similar import, might be given in evidence, to show that the first uttering of the words was malicious. But the court also declared that they could go no further, and that they could not permit a distinct calumny, uttered by the defendant, to be given in evidence, to prove his malice in speaking the words for which the action was brought. We adhere to the declaration then made ; and as, in the case now before us, the defendant was sued for charging the female plaintiff with stealing beds, evidence of his having subsequently charged her with stealing other articles, at a different time, was not admissible.

The only purpose for which words, that are not the ground of the action brought, can ever be given in evidence, is to prove that the words for which the action is brought were spoken maliciously. But, even for this purpose, such evidence is, in most cases, wholly unnecessary, because, in most cases, when words that are in themselves actionable are uttered, a malicious intent is an inference of law, and requires no proof. Express malice needs not to be inquired into, except where

12 *

the words are shown to have been spoken upon a lawful occasion. For this reason, as we suppose, it has been held by lord Abinger, and also by Patteson, J., sitting at *nisi prius*, twenty-seven years since the decision in *Tate* v. *Humphrey*, that even evidence of the repetition, by the defendant, of the words for which he is sued, or the uttering of words of similar import, is inadmissible, when the words first uttered are unambiguous. *Pearce* v. *Ornsby*, 1 M. & Rob. 455 ; *Symmons* v. *Blake*, 1 M. & Rob. 477. In the analogous case of an action for libel, lord Ellenborough had previously ruled, that subsequent publications by the defendant, concerning the plaintiff, were not admissible for the purpose of showing *quo animo* the first libel was published, unless that libel was equivocal. *Stuart* v. *Lovell*, 2 Stark. R. 93. These decisions are now referred to, not to raise any doubt concerning the admissibility of the evidence which was adjudged to have been rightly received in the case of *Bodwell* v. *Swan*, but to show that there are now stronger reasons than were then known to exist, for restricting the admission of evidence, at least within the limits which were then prescribed.

2d. But the complaint made by the defendant, and his testimony in support of it, on the hearing before the magistrate, are not to be regarded as slanderous words spoken by the defendant. They were proceedings in a course of justice, before a magistrate who had jurisdiction of the offence charged ; and the defendant is in no way to be held answerable for them as for a slander. This has been the settled law ever since the reign of Henry the seventh. *Beauchampe* v. *Croft*, Keilw. 26, and Dyer, 285 ; March on Slander (ed. of 1674), 92 ; Bac. Ab. Slander, E. ; 2 Stark. Ev. 874 ; 2 Leigh's Nisi Prius, 1369 ; *Fowler* v. *Homer*, 3 Campb. 294 ; *Hoar* v. *Wood*, 3 Met. 197. If the charge then made by the defendant was false, and known by him to be so, he may be indicted for perjury. If the charge was malicious, and without probable cause, he is liable to the plaintiffs in an action for a malicious prosecution. Even in such an action, neither malice nor want of probable cause would be presumed in the

first instance, but both must be proved by legal evidence. In the present case, the proceedings before the magistrate, as given in evidence at the trial, do not warrant the inference that the defendant was actuated by malice. The legal presumption is, that he acted *bona fide*, and the contrary cannot be shown on the trial of the issue joined in this case. If it is not shown, and cannot be shown, that the defendant was then actuated by malice, those proceedings furnish no evidence that the charge, for which this action is brought, was maliciously made by him.

The case of *Tate* v. *Humphrey*, before cited, may seem to militate with these views. That case, however, is distinguishable from this. By the English practice, a bill of indictment is put into proper form by the prosecutor, or on his behalf, and is preferred, without oath, to the grand jury, who examine witnesses, and return "a true bill" or "*ignoramus.*" The preferring of a bill for perjury was therefore held, in *Tate* v. *Humphrey*, to have been merely a repetition, in writing, of the oral charge of perjury which the defendant had previously made. But in this commonwealth, the grand jury first examine witnesses, on oath, and then order or refuse to order a bill to be drawn up. In the present case, the defendant made a complaint to the magistrate, on oath, and testified, on oath, at the hearing. For this reason, as before stated, he must now be presumed to have acted with good faith.

It may also be here remarked, that it has been held, in England, that in an action for a malicious prosecution, evidence of a bill having been thrown out by the grand jury, is sufficient to warrant an inference of the absence of probable cause (by Holroyd, J. 4 Barn. & Cres. 23, 24); and that, every where, want of probable cause warrants the inference of malice.

The second exception, taken in this case, must be overruled. We are not called upon to decide whether the evidence was legally admissible, which was allowed to be given of the character of the plaintiff's house, and the conduct of

third persons there, while it was under the management and control of the wife. The ruling of the judge, on this point, was quite as favorable to the defendant as the rules of law permit; and the evidence, which the judge excluded, was clearly inadmissible. The damages, which a wife sustains from a charge of larceny, cannot be reduced by proof that her husband keeps a disorderly house.

The third exception must also be overruled. The evidence offered by the defendant, to show that he believed the charge made by him was true, was rightly excluded. He did not offer this evidence for the purpose of proving that the words spoken by him were true. Nor did he show, or offer to show, that he spoke the words on any lawful occasion, or in the performance of any real or supposed duty, as was the case in *Bradley* v. *Heath*, 12 Pick. 163, cited by his counsel. He merely offered to prove, " with a view to rebut the presumption or evidence of malice, and in mitigation of damages," circumstances which excited his suspicion, and furnished reasonable cause for his belief, that the female plaintiff had stolen his beds. Such evidence has been held to be admissible, by the courts of some of the states. See 2 Greenl. on Ev. § 275, and cases there cited; *Rigden* v. *Wolcott*, 6 Gill & Johns. 413; *Williams* v. *Miner*, 18 Conn. 464. In the courts of other states, the contrary has been held. And we consider it as settled, in this commonwealth, that such evidence is inadmissible. *Alderman* v. *French*, 1 Pick. 1; *Bodwell* v. *Swan*, 3 Pick. 376; *Hix* v. *Drury*, 5 Pick. 296; *Brickett* v. *Davis*, 21 Pick. 404. But if this were *res integra*, we should have no hesitation in rejecting the evidence which the defendant offered at the trial. It had no tendency to disprove the malice of the defendant. For malice, in its legal sense, is not personal enmity. A wrongful act, purposely done, is all that is necessary to be shown in proof of malice. *Bromage* v. *Prosser*, 4 Barn. & Cres. 255; *Commonwealth* v. *Bonner*, 9 Met. 410. Nor had the evidence, in our judgment, any legitimate tendency to mitigate the damages. The damages, in an action of slander, are to be meas-

ured by the injury caused by the words spoken, and not by the moral culpability of the speaker. The general character of the plaintiff may be shown to be bad ; for this shows that his injury is small. But reports and rumors, unfavorable to his character, cannot be given in evidence, in this commonwealth, for the purpose of reducing damages. *Bodwell* v. *Swan*, 3 Pick. 376 ; *Stone* v. *Varney*, 7 Met. 91. *A fortiori*, evidence of the defendant's suspicions, however excited, cannot be received for such purpose.

The first exception is sustained, and a new trial is to be had at the bar of this court.